UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| B. E. and A. R., on their own behalf and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>DOROTHY F. TEETER, in her official capacity as Director of the Washington State Health Care Authority,<br><br>Defendant. | NO. 2:16-cv-227<br><br>COMPLAINT<br>(CLASS ACTION) |

## I. INTRODUCTION

Plaintiffs are Medicaid enrollees who have contracted Hepatitis C, a communicable disease that afflicts millions of Americans. There is a cure for Plaintiffs and thousands of others, but the Washington State Health Care Authority does not cover curative, breakthrough drugs for all Medicaid beneficiaries for one impermissible reason: they are expensive. It is unlawful to withhold prescription drugs that cure a disease from Medicaid beneficiaries based on the cost of those drugs. Plaintiffs ask this Court to order the Health Care Authority to cover these drugs so they and others similarly situated may be cured.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

## II. PARTIES

1. ***B.E.*** Plaintiff B.E. is a resident of Seattle, Washington. Ms. E. is eligible for and enrolled in Medicaid, which is administered by the Washington state Health Care Authority ("WHCA"). Ms. E. is diagnosed with Hepatitis C virus ("HCV"). Her treating provider prescribed Harvoni®, ledipasvir-sofosbuvir ("Harvoni"), a prescription drug that effectively cures the disease in more than ***90%*** of the individuals who are treated with it. When she attempted to fill her prescription through her Medicaid coverage, WHCA denied Ms. E.'s request because Harvoni is expensive. WHCA did not offer Ms. E. any other medication as an alternative to treat her HCV.

2. ***A.R.*** Plaintiff A.R. is a resident of Lakewood, Washington. Mr. R. is also eligible for and enrolled in Medicaid. He is also diagnosed with HCV for which his treating medical provider has prescribed Harvoni. WHCA also denied Mr. R.'s request for Harvoni for the same reason it denied B.E.'s request. WHCA did not offer Mr. R. any other medication as an alternative to treat his HCV.

3. ***Dorothy F. Teeter.*** Defendant Dorothy F. Teeter is the Director of the Washington State Health Care Authority. WHCA is the designated single state agency for Washington's Medicaid programs. Ms. Teeter is responsible for ensuring that the Medicaid program is administered in a manner consistent with all state and federal laws, including the Medicaid Act. Ms. Teeter is sued in her official capacity only. All alleged acts by Ms. Teeter and WHCA were made under color of state law.

## III. JURISDICTION AND VENUE

4. ***Jurisdiction***. Jurisdiction of this Court arises under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and 28 U.S.C. § 1343(3) and (4), which confer on the federal district courts original jurisdiction over all claims asserted pursuant to 42 U.S.C. § 1983 to redress deprivations of rights, privileges or immunities guaranteed by Acts of Congress and the United States Constitution.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

5. ***Venue***. Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to plaintiffs' claims occurred in the Western District of Washington, and defendants may be found here.

## IV. NATURE OF THE CASE

6. ***Plaintiffs' Need for Treatment with Harvoni***. Both Ms. E. and Mr. R. have been diagnosed with Hepatitis C ("HCV"). Both seek treatment with Harvoni, one of several direct-acting antiviral medications ("DAAs") recommended for nearly ***all*** patients diagnosed with chronic HCV infection by the American Association for the Study of Liver Diseases and the Infectious Diseases Society of America. Treatment results in a more than ***90% cure rate***. There is no alternative medication or medical intervention that would provide Ms. E. or Mr. R. with equally beneficial results.

7. ***WHCA Limits Coverage for Harvoni and other DAAs for Fiscal Reasons Only.*** WHCA, pursuant to a uniform coverage policy, will not approve plaintiffs' treatment with Harvoni. WHCA has put in place internal coverage restrictions that impermissibly restrict DAA coverage. Specifically, WHCA rations HCV treatment, excluding all coverage except to its insureds who are most severely ill. The restrictions on coverage do not have a clinical purpose, but are imposed solely due to WHCA's fiscal concerns.

8. ***WHCA's Uniform Policy Risks the Lives and Health of Medicaid Enrollees***. WHCA's restrictive internal coverage criteria require that infected individuals wait for treatment – potentially for years – until they demonstrate serious scarring or cirrhosis of the liver from HCV infection. In the meantime, Ms. E., Mr. R. and others are forced to live with a chronic inflammatory disease, including the pain, fatigue, depression, deteriorating health and increased risk of cancer and death that accompany it.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

9. ***WHCA's Restrictive Coverage Criteria Violate the Medicaid Act***. This lawsuit seeks to end WHCA's improper exclusion of Harvoni and other DAAs for the treatment of HCV for certain enrollees. It seeks legal and equitable remedies against WHCA on behalf of plaintiffs and the class they seek to represent. It also seeks a court order declaring WHCA's internal categorical exclusionary criteria illegal, void, and inconsistent with its obligations to provide reasonably prompt coverage of medically necessary prescription drugs to all Medicaid enrollees to whom they are prescribed. The lawsuit further seeks an injunction to prevent any future or ongoing efforts by WHCA to use and enforce any policies or practices that impermissibly deny, exclude or limit its insureds' access to medically necessary prescription drugs to treat HCV, in addition to ensuring that both coverage and corrective notice be provided to its insureds.

## V. FACTUAL AND LEGAL FRAMEWORK

### *HCV TREATMENT*

10. ***HCV Is Widespread***. HCV is a chronic, life-threatening, communicable, blood-borne viral disease. It is estimated that approximately five million individuals in the United States are living with HCV, accounting for over 1% of the population. The Washington Department of Health estimates over 100,000 Washington residents are infected with HCV.

11. ***HCV Is a Serious Disease.*** In addition to the baseline manifestation of chronic inflammation throughout the body, HCV can lead to severe liver damage, infections, liver cancer, and death. Nearly 20,000 people in the United States die each year due to liver disease caused by HCV. *See* http://www.cdc.gov/hepatitis/Statistics/index.htm (last visited 1/25/16). Even before the advanced stages of the disease, individuals with HCV can suffer from heart attacks, fatigue, joint pain, depression, sore muscles, arthritis and jaundice. Statistics from the Centers for Disease Control and Prevention indicate that up to 70% of those with HCV will develop chronic



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

liver disease, 20% will develop cirrhosis, and 5% will develop liver cancer. HCV is the leading indication for liver transplants in the United States. *See* http://www.cdc.gov/hepatitis/hcv/hcvfaq.htm (last visited 2/3/16).

12. ***Severity of HCV Is Measured by a Fibrosis Score***. Liver health for those who are infected with HCV is graded according to the level of liver scarring under a fibrosis score. The scoring ranges from a score of F0 (mild scarring or scarring absent) to F4 (significant liver damage; cirrhosis).

13. ***Prior Treatments Were Expensive, Often Ineffective and Accompanied by Significant Side Effects.*** Until DAAs were approved, the standard of care for the treatment of HCV was a three-drug treatment containing boceprevir, interferon and ribavirin. The treatment only provided at most a 70% cure rate, and was accompanied by significant adverse side effects such as anemia, insomnia, anxiety, depression, nausea, bone pain, muscle, liver failure, joint pain, memory loss and death. On information and belief, WHCA covered the three-drug treatment for any Medicaid beneficiary who was HCV irrespective of the person's Metavir Fibrosis score.

14. ***FDA Approves Harvoni and other DAAs as a "Breakthrough Therapy."*** Fortunately for Ms. E., Mr. R. and others like them, the federal Food and Drug Administration ("FDA") has approved DAAs, a class of curative pharmaceutical drug treatments for HCV. One such DAA, Harvoni, was approved on October 10, 2014. It has a success rate over 90% and is accompanied by few, if any, side effects. Harvoni was designated a "breakthrough therapy" by the FDA, a classification reserved for drugs that have proven to provide substantial improvement over available therapies for patients with serious or life-threatening diseases.

15. ***Harvoni and Other DAAs Are Recommended for Nearly All Patients with HCV, Without Regard for Fibrosis Score***. Harvoni and other DAAs are the standard of medical care for the treatment of all HCV. This includes treatment of all individuals



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

irrespective of fibrosis score. Treatment guidelines approved by the American Association for the Study of Liver Diseases and the Infectious Diseases Society of America ("AASLD/IDSA") confirm that Harvoni and other DAAs should ***not*** be reserved for only individuals with fibrosis scores of F3 and F4. *See* http://hcvguidelines.org/ (last visited 1/25/16). Rather, the standard of care is treating "all patients with chronic HCV infection, except those with short life expectancies that cannot be remediated by treated HCV, by transplantation, or by other directed therapy." *See* http://hcvguidelines.org/full-report/when-and-whom-initiate-hcv-therapy (last visited 1/25/16). Treating nearly all HCV patients is the standard of care in the community.

16. ***There Is No Equally Effective Alternative Medication or Medical Intervention.*** DAAs are the only medication or medical intervention for HCV that produce a sustained virologic response ("SVR") in more than 90% of patients. SVR status means that the virus is virtually undetectable in a patient; this is considered to be a cure of the infection. The prior intervention offered to HCV patients, treatment with boceprevir, interferon and ribavirin, only produced SVR in approximately 70% of patients, resulted in a host of adverse side effects. Without treatment, Medicaid enrollees infected with chronic HCV will never rid themselves of the inflammatory disease, placing these Medicaid enrollees at significantly higher risk for extrahepatic symptoms, liver disease, liver cancer, and even death.

17. ***People with HCV Can Transmit It.*** HCV is a communicable disease. The CDC lists people known to be at increased risk for HCV infection. See http://www.cdc.gov/hepatitis/hcv/hcvfaq.htm (last visited 2/3/16). Among those at risk are health care workers after needle-sticks involving HCV-positive blood, and infants born to HCV-positive mothers. WHCA's policy of restricting DAAs ignores the public health risks associated with not curing HCV.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

***THE MEDICAID ACT REQUIRES COVERAGE OF DAAs TO TREAT HCV.***

18. ***The Medicaid Act Includes Prescription Drug Coverage.*** The Medicaid Act requires participating state programs (known as "State Medicaid Plans") to make medical assistance available to qualified individuals for certain services. 42 U.S.C. § 1396a(a)(10)(A). The State Medicaid Plan has the option to make medical assistance available for other specified services, including prescription drugs. 42 U.S.C. § 1396d(a)(12). Once the state chooses to provide medical assistance prescription drugs, it must comply with the requirements of § 1396r–8(k) for payments of covered outpatient drugs. 42 U.S.C. § 1396a(a)(54). Washington state has chosen to provide prescription drug coverage as part of its State Medicaid Plan.

19. ***All of the Requirements for Coverage Of DAAs Under Washington's State Medicaid Plan Are Met.*** State Medicaid plans, including Washington's, are generally required to provide coverage for any covered outpatient drug that is medically necessary once the drug manufacturer enters into a rebate agreement and the medicine is approved by the FDA and prescribed by a provider. *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 652, 123 S. Ct. 1855 (2003) *("PHARMA")*; 42 U.S.C. §§ 1396r-8(a)(1), 1396r-8(d)(B), 1396r-8(k)(2)(A); (6). WHCA covers DAAs, including Harvoni, under the Washington State Medicaid Plan, but only for the most severely ill individuals with HCV. WHCA refuses to cover the medication for Medicaid enrollees with less severe liver damage or other symptoms of HCV, even though the medications will likely cure them.

20. ***Covered Prescription Drugs, Including DAAs, Must Be Provided When Medically Necessary, with "Reasonable Promptness," for All Comparable Medicaid Enrollees.*** Since Harvoni and other DAAs meet the standard for coverage under Washington's Medicaid program, the Medicaid Act requires coverage of the medicine when it is medically indicated. 42 U.S.C. §§ 1396a(a)(10)(A); 1396r-8. *See also* WAC 182-500-0070 (defining "medical necessity" in Washington's Medicaid program). Under



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

Washington's Medicaid program, if the treatment is covered and medically necessary, it must also be provided with "reasonable promptness," typically within 90 days. 42 U.S.C. § 1396a(a)(8); *Doe v. Chiles,* 136 F.3d 709, 714 (11th Cir. 1988). In addition, medically necessary prescription drug coverage, including access to Harvoni and other DAAs, cannot be made available in a lesser amount, duration or scope than the coverage made available to any other individual eligible under the State Medicaid Plan. 42 U.S.C. § 1396a(a)(10)(B); 42 C.F.R. § 440.240. This is known as Medicaid's "comparability" requirement. *See Jenkins v. Washington Department of Social and Health Services,* 162 Wn. 2d 287, 296-97 (2007). WHCA's coverage criteria for HCV treatment must comply with all three of these Medicaid Act requirements.

### *WHCA'S UNIFORM EXCLUSIONARY COVERAGE CRITERIA*

21. ***WHCA Has Adopted Coverage Criteria for Harvoni and Other DAAs***. WHCA has adopted a uniform coverage approach with respect to when and under what conditions it will approve Harvoni and other similar DAAs for coverage under Washington's Medicaid program. A copy of WHCA's Coverage Criteria is attached as ***Appendix 1.***

22. ***WHCA Does Not Provide Coverage for All Its HCV-infected Insureds***. WHCA's coverage criteria generally exclude coverage for Harvoni and other DAAs for Medicaid enrollees with fibrosis scores of F0, F1 and F2 where no other conditions are present.

23. ***WHCA's Coverage Criteria Are Inconsistent With Accepted Medical Practice.*** WHCA has no clinical or medical basis to deny treatment to Medicaid enrollees who have a fibrosis score of F0, F1 or F2. On the contrary, the HCV Guidelines provide that "[b]ecause of the myriad benefits associated with successful HCV treatment, clinicians should treat HCV-infected patients with antiviral therapy with the goal of achieving an SVR, ***preferably early in the course of their chronic HCV infection***



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

***before the development of severe liver disease and other complications***." *See* http://hcvguidelines.org/full-report/when-and-whom-initiate-hcv-therapy (last visited 1/25/16) (emphasis added). Treatment of HCV even in patients with mild or no liver disease decreases complications and death rate due to liver disease and prevents transmission of HCV to others.

24. ***WHCA's Coverage Criteria Put Medicaid Enrollees at Risk of Multiple HCV Complications, Including Death***. WHCA's Medicaid enrollees who meet the standards set forth by the American Association for the Study of Liver Diseases and the Infectious Diseases Society of America, but who are excluded under WHCA's coverage criteria, are put at risk. They are needlessly exposed to health conditions caused by HCV, including cirrhosis, cancer, fatigue, joint pain, depression, sore muscles, arthritis, avoidable liver transplants, jaundice and even death. In addition, the lack of treatment of infected individuals increases the chance that members of the insured's household and the public will be exposed to and contract HCV.

25. ***WHCA Has Publicly Stated Its Coverage Position***. WHCA's coverage position is publicly posted on WHCA's website. *See* http://www.hca.wa.gov/medicaid/pharmacy/Documents/hepatitis_c_treatment_policy.pdf (last visited 02/02/16). It is known by many doctors treating Medicaid enrollees**.**

26. ***WHCA's Coverage Criteria Impermissibly Ration Care***. WHCA's coverage criteria are not tied to the requirements of the Medicaid Act, or to WHCA's regulations governing coverage of medically necessary prescription medications. Rather, WHCA's denial of coverage is an effort to ration care because of its concern over the perceived expense of Harvoni and other DAAs. As stated by Donna L. Sullivan, M.S., Pharm. D., HCA's Chief Pharmacy Officer, the real reason that HCA continues to employ the excessively restrictive coverage criteria is a ***political*** one**:**



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

> I've had discussions with Dr. Lessler, with Charissa and with the specialists in the community with the Department of Corrections as well as Labor and Industries, and ***I can guarantee you that all of us agree that everyone should be treated*** whether they are at stage 2, stage 3, stage 4. However, we have received funding only based on the criteria that we gave for F3. So we are having discussions with the Office of Financial Management with legislative staff. We have requested a supplemental budget to expand our coverage criteria to F3, but we can't just open up our doors right now and do that. … ***It's out of our hands. None of us would argue that we should not expand it***, that it's not the right thing to do, but we live in a ***political*** environment as a state that I have to operate within the resources and rules around those resources that have been given to us.

*See* http://www.hca.wa.gov/pdp/ptmeetingdocuments/Transcript_102115.pdf, p. 64 (emphasis added). These concerns cannot usurp WHCA's obligations under the Medicaid Act.

### *PLAINTIFFS E. AND R. REQUIRE HARVONI TO TREAT HCV.*

27. ***Plaintiffs Are Enrolled in Medicaid.*** During certain time periods on and after October 10, 2014, Plaintiffs E. and R. have been, are or will be enrolled in Washington state's Medicaid program, which is administered by WHCA. Both are "qualified individuals" as defined in 42 U.S.C. § 1396a(a)(10)(A).

28. ***Treatment With Harvoni Is Recommended and Prescribed for Both Plaintiffs.*** Plaintiffs E. and R. both are diagnosed with HCV. Plaintiffs both have a Metavir Fibrosis Score of F0. Both plaintiffs had Harvoni prescribed by their treating medical providers.

29. ***Treatment With Harvoni Is "Medically Necessary" for Plaintiffs B.E., R.A. and Similarly Situated Others Under the WHCA Definition of Medical Necessity.*** Treatment with Harvoni is "medically necessary" for plaintiffs and similarly situated others under the established definition of "medically necessary" located in WAC 182-500-0070, and established by the consent order in *Mead v. Burdman,* No. 818663



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

(King Cty. Sup. Ct., J. Hunter, March 20, 1978). Harvoni and other similar DAAs are likely to cure plaintiffs E., R. and other similarly situated individuals. There is no equally effective, less costly alternative prescription drug or medical intervention, and WHCA has offered none. WHCA apparently takes the position that treatment may be delayed because the adverse health effects of chronic HCV can be reversed until a Metavir Fibrosis Score of F3 or F4 is reached. This position is inconsistent with clinical studies of HCV treatments, the AASLD/ISDA Treatment Recommendations and the standard of care for treatment of HCV in Washington state.

30. ***Plaintiffs' Request for Coverage of Harvoni Was Denied Under WHCA's Uniform Coverage Criteria.*** WHCA denied Ms. E.'s preauthorization request for treatment with Harvoni on January 12, 2016 because her Metavir Fibrosis Score was under F3 and she had no qualifying co-morbid condition. WHCA did not offer Ms. E. any other medication as an alternative to treat her HCV. WHCA denied Mr. R.'s pre-authorization request for treatment with Harvoni on June 15, 2015 because his Metavir Fibrosis Score was under F3 without a qualifying co-morbid condition. WHCA did not offer Mr. R. any other medication as an alternative to treat his HCV. Neither plaintiff was provided with notice of the denial that met constitutional due process requirements. Nonetheless, Mr. R. appealed. An administrative hearing was held on September 30, 2015. Mr. R. appeared *pro se*, and the Administrative Law Judge issued an initial decision, upholding WHCA's denial. Mr. R. appealed the decision to the WHCA Board of Appeals, which, *sua sponte,* remanded the case to the Administrative Law Judge for an additional hearing.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

## VI. CLASS ALLEGATIONS

31. ***Size and Definition of Class.*** The class consists of:

(a) all individuals who:

(i) were, are, or will be enrolled in Washington state Health Care Authority's Medicaid Program on or after October 10, 2014;

(ii) require, or are expected to require treatment for Hepatitis C with Harvoni/ledipasvir-sofosbuvir or other similar direct acting antivirals under the current guidelines adopted by the American Association for the Study of Liver Diseases and the Infectious Diseases Society of America (*see* http://www.hcvguidelines.org/full-report/when-and-whom-initiate-hcv-therapy) (last visited 1/25/16); and

(iii) do not meet the coverage criteria for HCV medication adopted by WHCA, as set forth in ***Appendix 1.***

32. ***Class Representatives B.E. and A.R.*** As noted above, named plaintiffs B. E. and A. R. are enrolled in WHCA's Medicaid Program. Both have HCV and require treatment with Harvoni. Both have been denied coverage of Harvoni because their Metavir Fibrosis Score is under F3 and they have no qualifying co-morbid condition. Both plaintiffs meet the criteria for treatment under the guidelines approved by the American Association for the Study of Liver Diseases and the Infectious Diseases Society of America. Their claims are typical of the claims of the other members of the class, and they will fairly and adequately represent the interests of the class. Neither have any conflicts of interest with the class.

33. ***Size of Class.*** The class is sufficiently numerous. WHCA has denied coverage of Harvoni and other DAAs to at least 900 Medicaid consumers since January 1,



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

2015, likely because the enrollees had a Fibrosis Score of F0, F1 or F2.[1] WHCA estimates that if it expanded its coverage to include all enrollees with Fibrosis Score of F2, an additional 4700 Medicaid enrollees would be affected.[2] As a result, the class numbers in the thousands and is so large that joinder of all members is impracticable.

34. ***Common Questions of Law and Fact.*** This action requires a determination of whether WHCA's coverage criteria that denies, excludes and/or limits coverage of Harvoni and other similar DAAs violates the Medicaid Act. A determination of this issue will in turn determine whether plaintiffs and the class are entitled to declaratory and injunctive relief.

35. ***WHCA Has Acted on Grounds Generally Applicable to the Class.*** WHCA, by applying a uniform policy that results in the exclusion of Harvoni and other similar DAAs to plaintiffs and others similarly situated, has acted on grounds generally applicable to the class. Certification is therefore proper under Fed. R. Civ. P. 23(b)(2).

36. ***Class Counsel.*** Plaintiff has retained experienced and competent class counsel capable of representing the class expertly and without conflict of interest.

## VII. CLAIMS FOR RELIEF

### *FIRST CLAIM: EXCLUSION OF QUALIFIED INDIVIDUALS FROM COVERED MEDICAL ASSISTANCE UNDER THE MEDICAID ACT*

37. Plaintiff re-alleges all of the above paragraphs.

38. Plaintiffs and the class are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 that defendant has violated Title XIX of the Social Security Act (also known as the Medicaid Act) by excluding qualified Medicaid recipients from medically necessary treatment as required by

[1] *See* http://www.hca.wa.gov/pdp/ptmeetingdocuments/Hep_C_DUR_1015.pdf, p. 3 (WHCA received 1695 requests for HCV treatment from January-June 2015, and only approved 45% of the requests, denying more than 900 Medicaid enrollees curative treatment).

[2] http://www.hca.wa.gov/Documents/budget/2016_PL-2_Hepatitis_C_Treatment_Expansion.pdf.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

42 U.S.C. §1396a(a)(10)(A).

***SECOND CLAIM: VIOLATIONS OF MEDICAID COMPARABILITY***

39. Plaintiff re-alleges all of the above paragraphs.

40. Plaintiffs and the class are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 because defendant, by discriminating among similarly situated Medicaid recipients on the basis of categorical restrictions that are not based upon prevailing clinical standards, has violated Medicaid Act comparability requirements, 42 U.S.C. § 1396a(a)(10)(B)(i) and (ii); 42 C.F.R. § 440.240.

***THIRD CLAIM: VIOLATIONS OF REASONABLE PROMPTNESS***

41. Plaintiff re-alleges all of the above paragraphs.

42. Plaintiffs and the class are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 that defendant has violated the "reasonable promptness" requirement of Title XIX of the Social Security Act, 42 U.S.C. § 1396a(a)(8), by implementing a policy that *de facto* rations coverage for Medicaid enrollees seeking HCV treatment, thereby requiring plaintiffs and the class to wait until they have developed severe liver damage before receiving medically necessary treatment.

## VIII. DEMAND FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

(a) Certify this case as a class action, designate the named plaintiffs as class representatives, and designate SIRIANNI YOUTZ SPOONEMORE HAMBURGER, Richard E. Spoonemore and Eleanor Hamburger, COLUMBIA LEGAL SERVICES, Amy L. Crewdson, and CENTER FOR HEALTH LAW AND POLICY INNOVATION, Kevin Costello, as class counsel;

(b) Declare that WHCA may not apply policies or practices that exclude or impermissibly limit treatment of HCV with Harvoni or other similar DAAs pursuant to



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

coverage criteria that are inconsistent with the current AASLD/IDSA Treatment Guidelines;

(c) Enjoin WHCA from continuing to implement and apply its current HCV Treatment Policy, attached as ***Appendix 1***;

(d) Require WHCA to provide corrective and constitutionally adequate notice to class members, and to reprocess and approve coverage for all class members who were previously denied coverage under WHCA's current HCV Treatment Policy;

(e) Award plaintiffs and the class their attorney fees and costs pursuant to 42 U.S.C. § 1988; and

(f) Award such other relief as is just and proper.

DATED: February 16, 2016.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER

By: *s/ Richard E. Spoonemore*
By: *s/ Eleanor Hamburger*
Richard E. Spoonemore (WSBA #21833)
Eleanor Hamburger (WSBA #26478)
999 Third Avenue, Suite 3650
Seattle, WA 98104
Tel. (206) 223-0303
Email: rspoonemore@sylaw.com
ehamburger@sylaw.com

COLUMBIA LEGAL SERVICES

By: *s/ Amy L. Crewdson*
Amy L. Crewdson (WSBA #9468)
711 Capitol Way South, #304
Olympia, WA 98501
Tel. (360) 943-6585, Ext. 214
Email: amy.crewdson@columbialegal.org

HARVARD LAW SCHOOL CENTER FOR
HEALTH LAW & POLICY INNOVATION

By: *s/ Kevin Costello*
Kevin Costello (*pro hac vice admission to be sought*)
122 Boylston Street
Jamaica Plain, MA 02130
Tel. (617) 390-2578
Email: kcostello@law.harvard.edu

Attorneys for Plaintiffs



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246